UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                                                     **REPORT,**
                                                     **RECOMMENDATION**
                                                     **AND ORDER**

v.

                                                     22-CR-00074(RJA)(JJM)

JOSEPH S. ZASO,

                               Defendant.

_____

        Defendant Joseph Zaso is charged in a four-count Indictment [1][1] with drug offenses. Before the court are Zaso's pretrial motions to suppress (Verrillo Declaration [70], §§I and IV), and for discovery (id. at §§VIII(R)(5), (6)), as well as the government's cross-motion for reciprocal discovery. *See* Government's Response [78], §XV.[2]  Having considered the parties' submissions [70, 78] and heard oral argument on February 9, 2023 [81], for the following reasons, the government's cross-motion is granted, Zaso's discovery motions are denied, and I further recommend that Zaso's motions to suppress be denied.

## BACKGROUND

        At the time of Zaso's May 26, 2022 arrest on these charges, a search was conducted on his residence at the upper apartment of 48 Laurel Street in the City of Buffalo,

---

[1]       Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF pagination.

[2]       In anticipation of a Superseding Indictment, the parties agreed to defer consideration of Zaso's motion for a bill of particulars (Verrillo Declaration [70], Section IX).  All other portions of Zaso's pretrial motion [70] were deemed resolved, without prejudice to renewal before the trial judge. *See* February 9, 2023 Text Order [82].

New York.  That search was pursuant to a May 24, 2022 search warrant signed by United States

Magistrate Judge Mark W. Pedersen that was supported by the Affidavit of United States Drug

Enforcement Special Agent ("SA") David Lauer. *See* [78-5].


## DISCUSSION

**A.     Zaso's Motions**

**1.     Suppression of Evidence from 48 Laurel Street**

Zaso challenges both the existence of probable cause for the search and the

breadth and particularity of the warrant. Verrillo Declaration [70], §I.  While the government

disputes those arguments, it also contests Zaso's standing to contest the search and contends that

even if deficient, law enforcement acted in good faith reliance on the warrant. Government's

Response [78], §I.

**a.     Standing**

Relying on United States v. Pennick, 2020 WL 4692475, 4 (W.D.N.Y. 2020)

(Arcara, J.), the government contends that Zaso's Affidavit of standing, which merely states that

48 Laurel Street was his residence on May 26, 2022 ([70] at 38, ¶3), is inadequate to establish

that he had a reasonable expectation of privacy in the premises. Government's Response [78] at

4.  However, Pennick is readily distinguishable, insofar as it addressed whether the defendant

could possess a reasonable expectation of privacy in his residence when he was under

supervision on pretrial release and subject to a suspicionless search condition. *See* Pennick, 2020

WL 4692475 at *5.

-2-

In any event, I need not determine whether Zaso has established standing to contest the search, since he offers no basis to warrant suppression. *See* Byrd v. United States, __ U.S.__, 138 S. Ct. 1518, 1530 (2018) (Fourth Amendment "standing" is "a useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search. Because Fourth Amendment standing is subsumed under substantive Fourth Amendment doctrine, it is not a jurisdictional question and hence need not be addressed before addressing other aspects of the merits of a Fourth Amendment claim").

### b.    Probable Cause

The Fourth Amendment states that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "Probable cause is not a high bar." District of Columbia v. Wesby, __ U.S.__, 138 S. Ct. 577, 586 (2018). In determining the existence of probable cause, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983).

"A search warrant issued by a neutral and detached magistrate is entitled to substantial deference, and doubts should be resolved in favor of upholding the warrant." United States v. Rosa, 11 F.3d 315, 326 (2d Cir. 1993). However, that deference "is not boundless . . . . [R]eviewing courts will not defer to a warrant based on an affidavit that does not provide the

-3-

magistrate with a substantial basis for determining the existence of probable cause." United States v. Leon, 468 U.S. 897, 914-15 (1984).

Zaso's argument centers on the fact that SA Lauer's Affidavit primarily discussed the alleged activities at his former residence at 12 Locust Street in Jamestown, New York, rather than 48 Laurel Street, the target residence. Verrillo Declaration [70], §I(G).  He contends that SA Lauer's Affidavit did "not establish a need to search the Laurel Street residence". Id. at §I(H).

These arguments are not persuasive.  Through a variety of human sources, GPS tracking evidence and electronic records, SA Lauer's Affidavit provided ample probable cause to believe that Zaso was a heroin/fentanyl trafficker, primarily centered in the Jamestown, New York area, since 2018.  Although "a defendant's status as a drug dealer alone does not give rise to a fair probability that evidence of drug trafficking will be found in his home", United States v. Williams, 350 F. Supp. 3d 261, 267 (W.D.N.Y. 2018), SA Lauer's Affidavit [78-5] tied Zaso's heroin trafficking activities to not only his former residence at 12 Locus Street in Jamestown (see id. at ¶12, 18-20, 28), but also to his then current address at 48 Laurel Street. Id. at ¶¶14-16, 31-32.

The most direct link between Zaso's drug trafficking activities and his residence at 48 Laurel Street came from a cooperating witness who stated that in or about April or May 2022,[3] Zaso sold 2-3 ounces of heroin from his residence and, while there, threatened the witness with a firearm for an outstanding drug debt. Id., ¶¶31-32.  Zaso makes much of the fact that the

---

[3]     The cooperating witness stated on May 17, 2022 that "sometime between two . . . weeks ago and a month" this occurred. See Lauer Affidavit [78-5], ¶31.

cooperating witness was unable to identify the exterior of the residence from that encounter (Verrillo Declaration [70], §I(H)), but ignores that the witness later positively identified it as the location of the heroin purchase from interior photographs of the residence. Lauer Affidavit [78-5], ¶¶33-34.

Coupled with the information supplied by this cooperating witness, SA Lauer stated that, though his training and experience, he had learned that drug traffickers, such as Zaso, often maintain controlled substances and large amounts of currency in several locations, including their residences (*see, e.g.*, Lauer Affidavit [78-5], ¶¶46(b)-(e), (h), (q)-(r)), which contributed to the totality of the circumstances that established probable cause for the search. *See* Williams, 350 F. Supp. 3d at 268 ("[a]n investigator's opinion that based on training and experience, drug traffickers maintain evidence of their illegal activities at their residences, may assist in establishing probable cause to search").

### c.    Overbreadth

Zaso contends that SA Lauer's Affidavit "failed to establish that the items set forth in [the Schedule of Items to be Searched for and Seized] existed or were likely to exist based on anyone with personal knowledge of [his] alleged activities". Verrillo Declaration [70], §I(N). This appears to be a facial challenge to the overbreadth of the warrant. *See* United States v. Elkorany, 2021 WL 3668086, *4 (S.D.N.Y. 2021) ("the requirement that a warrant not be overbroad focuses on whether the government lacked probable cause to search and seize the listed items").

"[T]he overbreadth inquiry asks whether the warrant authorized the search and seizure of items as to which there is no probable cause." United States v. Safford, 2017 WL

-5-

11407489, *8 (N.D.N.Y. 2017), aff'd, 814 F. App'x 638 (2d Cir. 2020). Hence, a warrant is overbroad if the "'description of the objects to be seized . . . is broader than can be justified by the probable cause upon which the warrant is based.'" United States v. Galpin, 720 F.3d 436, 446 (2d Cir. 2013) (quoting 2 W. LaFave, Search and Seizure § 4.6(a) (5th ed. 2012)).

A review of SA Lauer's Affidavit establishes that the scope of the search warrant was appropriate and supported by probable cause. As discussed above, SA Lauer's Affidavit established probable cause to believe that Zaso was a large-scale, and ongoing, heroin trafficker. See, e.g., Lauer Affidavit [78-5], ¶16 ("Zaso purchases anywhere from 1,000-3,000 grams of heroin from his [source of supply]"). Based on SA Lauer's training and experience, he opined that drug traffickers, such as Zaso, maintain a variety of the items related to those activities at their residences, including heroin, books and records, firearms, currency, and cellular telephones. see Lauer Affidavit [78-5], ¶46. At least some of this was corroborated by the heroin purchase that occurred at 48 Laurel Street and firearm observed by the cooperating witness at that location in April or May of 2022. Id., ¶¶31-32

In turn, the Schedule of Items to be Searched for and Seized ([78-5] at 55-56) generally tracked SA Lauer's opinion of what items drug traffickers maintain at their residences, and gave authority to search for specific categories of items, including heroin and fentanyl, books and records related to heroin and fentanyl trafficking, firearms relating to drug trafficking activities, cash and other valuables that are suspected proceeds of drug trafficking activities, and cell phones. See United States v. Moody, 2021 WL 202698, *9 (W.D.N.Y.), adopted, 2021 WL 1054372 (W.D.N.Y. 2021) ("the warrant authorized the search for and seizure of specified evidence relevant to drug trafficking, such as, narcotics, drug records, photographs and video

-6-

tapes depicting individuals involved in narcotics violations, and bank records . . . . [This] is precisely the type of warrant that courts routinely uphold against overbreadth challenges")

In the absence of any specific identification by Zaso of which items were not supported by probable cause, I find no basis to conclude that the warrant was overbroad.

### d.  Particularity

Zaso argues that the warrant's "language is broad and not sufficiently precise to define what is legitimate for searching and what is improper to search". Verrillo Declaration [70], §I(P). [4]  "By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the [particularity] requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." Maryland v. Garrison, 480 U.S. 79, 84 (1987).

To be sufficiently particularized under the Fourth Amendment, a warrant must satisfy the following three criteria: "(1) it must identify the specific offense for which the police have established probable cause; (2) it must describe the place to be searched; and (3) it must specify the items to be seized by their relation to the designated crimes." United States v. Bursey, 801 F. App'x 1, 3 (2d Cir. 2020) (Summary Order).[5] Thus, generally, "warrants that limit a search to evidence relating to a particular crime, and which provide a list of examples as a means

---

[4]     The only specific argument Zaso makes concerns the search of his cell phone, which he argues was overbroad because the warrant did not put any confines on what was to be searched for on that device. See Verrillo Declaration [70], §§I(O)-(Q).  The government represents, and Zaso does not dispute, that the cell phone was not searched pursuant to the warrant, but rather Zaso's consent. See Government's Response [78] at 15 n. 2.  The government also represents that it is "not using [Zaso's] cell phone as evidence at trial". See id. at 19.  Therefore, this portion of the motion is moot.

[5]     Zaso does not argue that the warrant failed to properly describe the place to be searched.

of limiting the items to be seized, are upheld when confronted with a particularity challenge."

United States v. Pugh, 2015 WL 9450598, *22 (E.D.N.Y. 2015).

        The warrant here did just that.  The Schedule of Items to be Searched for and

Seized ([78-5] at 55-56) gave authority to search for specific categories of items (*e.g.*, heroin and

fentanyl, books and records related to heroin and fentanyl trafficking, firearms related to drug

trafficking activities, cash and other valuables that are suspected proceeds of drug trafficking

activities, and cell phones), each of which were identified in a prefatory paragraph to be related

to specified criminal offenses (*e.g.*, conspiracy to possess and distribute heroin and fentanyl (21

U.S.C. §846), possession of heroin and fentanyl with intent to distribute (21 U.S.C. §841(a)(1),

and maintaining a drug-involved premises (21 U.S.C. §856(a)(1)).

        "Warrants in narcotics cases have generally been subjected to less exacting

standards than other categories of cases", United States v. Sanders, 2021 WL 2843108, *4

(W.D.N.Y. 2021) (Arcara, J.), "and the seizure of phones, personal papers, and documents in

these types of cases is generally permitted". United States v. Fugate, 2022 WL 18359077, *3

(W.D.N.Y. 2022), adopted, 2023 WL 279815 (W.D.N.Y. 2023). The warrant here is no less

particular than those upheld by other courts. *See e.g.*, Fugate, 2022 WL 18359077 at *3

("[b]ecause the documents, papers, and phones were adequately described here in terms of their

connection to the crime at issue, namely the possession and potential distribution of illegal drugs,

these portions of the warrant do not violate the Fourth Amendment"); United States v. Jacobson,

4 F. Supp. 3d 515, 524 (E.D.N.Y. 2014) (warrants were sufficiently particular where they

"referenced particular crimes and used illustrative lists as a means of limiting the items to be

seized"); United States v. Reed, 2013 WL 5503691, *4 (D. Vt. 2013) (the warrant "provided

adequate guidance limiting the scope of the search for evidence of a specific crime" where it "incorporated a list of evidence to be seized that included a description of the crime"); United States v. Smith, 2007 WL 2088938, *2-3 (W.D.N.Y. 2007) (Arcara, J.). Therefore, this motion is denied.[6]

### 2.    Motion to Suppress Identification

Shortly before his May 26, 2022 arrest, Zaso alleges that co-defendant Denver Komenda was shown a New York State driver's license photograph of Zaso during questioning. Verrillo Declaration [70], §IV(D). Likewise, he speculates that Holly Berenguer, an individual who had allegedly been receiving monthly amounts of heroin from Zaso (*see* Lauer Affidavit [78-5], ¶16), was shown a similar photograph during her contacts with law enforcement on September 5 and 16, 2021. Verrillo Declaration [70], §IV(E). Zaso "requests that the government be precluded from offering any evidence of identification procedures conducted by law enforcement or in the alternative, that an identification hearing be held pursuant to . . . U.S. v. Wade, 388 U.S. 218 (1967)". Id. at §IV(F).

"A trial witness may identify a defendant if: (1) an out-of-court identification procedure was not improperly suggestive; or (2) the in-court identification is grounded on 'an independent basis in memory.'" United States v. Stephenson, 2020 WL 2115719, *9 (W.D.N.Y.), adopted, 2020 WL 2113496 (W.D.N.Y. 2020) (Arcara, J.) (*quoting* United States v. Bubar, 567 F.2d 192, 197 (2d Cir. 1977)). Here, the government relies on the latter by stating

---

[6]    Based on this conclusion, it is unnecessary for me to address the government's good faith reliance arguments. *See* Government's Response [78] at 16-17.

that its trial witnesses will identify Zaso from their "personal interaction and independent memory". Government Response [78] at 26.

Based on these representations, there is neither a basis for conducting a Wade hearing at this time nor suppressing the identifications. *See* United States v. Valdez, 2020 WL 7700338, *5 (W.D.N.Y.), adopted 2020 WL 7137137 (W.D.N.Y. 2020) ("Wade hearings are not required for confirmatory identifications where the witness is sufficiently familiar with the defendant so as to negate the possibility of suggestiveness"); United States v. Sosa, 2018 WL 4659472, *3 (S.D.N.Y. 2018) ("where the government makes a sufficient showing that the identification is independently reliable, motions for pre-trial Wade hearings should be denied"). *See also* United States v. Crumble, 2018 WL 1737642, *2 (E.D.N.Y. 2018) ("[a]n in-court identification is . . . admissible, despite an improper pre-trial identification procedure, if the witness is familiar with the defendant prior to the incident").

However, when the government's witnesses, their anticipated testimonies, and Jencks Act (18 U.S.C. §3500) material are disclosed, the trial court will be "in a better position to determine if either a Wade hearing or *voir dire* outside the presence of the jury are necessary", and Zaso will have the ability to seek that relief, if necessary. Valdez, 2020 WL 7700338 at *6; Stephenson, 2020 WL 2115719 at *9.

3.    **Motion for Rule 16 Discovery**

"Rights of discovery in criminal cases, unlike in civil cases, are severely circumscribed." BCCI Holdings (Luxembourg), Societe Anonyme v. Pharaon, 1995 WL 489426,

-10-

*4 (S.D.N.Y. 1995). Apart from the government's <u>Brady</u>,[7] <u>Giglio</u>,[8] and Jencks obligations, "Rule 16 is . . . the sole authorized vehicle under the Federal Rules of Criminal Procedure for pre-trial discovery in criminal cases". <u>United States v. Louis</u>, 2005 WL 180885, *2 (S.D.N.Y. 2005).

Zaso seeks the following two categories of discovery:

-- "records . . . in support of any aggravating factor or sentencing enhancement under federal law or the United States Sentencing Guidelines Manual . . . . includ[ing] any medical and scientific reports associated with any drug overdose case along with . . . all proof establishing a causal connection between the overdose case and this defendant" (Verrillo Declaration [70], §VIII(R)(5)); and

-- "evidence relative to any perception, memory recall, or any other mental health deficiencies of government witnesses along with any evidence of drug addiction of government witnesses" (<u>id</u>. at §VIII(R)(6)).

Zaso offers two primary grounds for these requests. First, he contends that this discovery is "reasonable, material, and necessary for [his] defense", and to the extent that Rule 16 and the Jencks Act "reference a later time than now to produce said disclosure", such belated disclosure would "seriously prejudice[ ] and jeopardize[ ]" his "rights to due process and the right to confront his accusers with meaningful and effective legal representation". Verrillo Declaration [70], §§VIII(S), (U). Second, Zaso argues that he requires this information at a pretrial stage pursuant to <u>Missouri v. Frye</u>, 566 U.S. 134 (2012) and <u>Lafler v. Cooper</u>, 566 U.S.

---

<div style="border-top:1px solid #000; width:30%;"></div>

[7]    <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).
[8]    <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

156 (2012) in order for his counsel to "fully advise [him] of his [plea] rights and options".

Verrillo Declaration [70], §§VIII(S).  I will address each request separately.

### a.    Sentencing Enhancements

The government argues that Zaso "cites no authority for this request", which appears to impermissibly seek "evidence that may constitute additional charges or criminal culpability". Government's Response [78] at 43.  Despite these objections, the government states that it has already "provided some information relating to [a] serious event during the conspiracy" (id.), but provides no further information to indicate what that "serious event" was and whether it was the overdose referenced in Zaso's motion.

Neither Zaso's motion nor the government's response, both of which are entirely bereft of any supporting caselaw, are particularly helpful. Without more, I am skeptical of Zaso's entitlement to this discovery at this time. *See* United States v. Nobles, 422 U.S. 225, 235 (1975) ("[b]oth the language and history of Rule 16 indicate that it addresses only pretrial discovery"); United States v. Busch, 2013 WL 3759944, *2 (W.D.N.Y. 2013) ("[n]either Frye, nor Lafler, addressed the scope of pretrial discovery in a criminal case").  Therefore, on this limited record, and given the return of the Superseding Indictment [85], which may bring clarity to this issue, the motion is denied, without prejudice to renewal.

### b.    Witnesses' Memory Issues and Substance Abuse

Since it "does not have access to the mental health and drug history and treatment records of its witnesses", the government opposes this request.  In any event, the government represents that "[t]o the extent [it] becomes aware of [such] information . . . which could be used as impeachment material against those witnesses, [it] will either disclose what the government

knows to the defense, or more likely, present it to the District Judge in an *ex parte* submission so that the Court can decide whether the information should be disclosed to the defense." Government's Response [78] at 41-42.

Based on these representations, as well as the government's representations concerning its <u>Brady/Giglio</u> obligations (government's Response [78] at 33-37), identical requests have been denied, and Zaso offers no reason as to why a different outcome is warranted here. *See* <u>United States v. Stewart</u>, 2019 WL 5288000, *7 (W.D.N.Y. 2019).

**B.    The Government's Cross-Motion for Reciprocal Discovery**

The government cross-moves for the production of reciprocal discovery pursuant to Rule 16(b). Government's Response [78] at 53-54.  "Rule 16 . . .  imposes reciprocal discovery obligations on defendants." <u>United States v. Smith</u>, 985 F.Supp.2d 506, 522 (S.D.N.Y. 2013). Zaso has not opposed this request. Therefore, it is granted.

Pursuant to Fed. R. Evid. 807, the government also "requests advance disclosure of any statements [Zaso] proposes to use at . . . trial". Government's Response [78] at 54. Likewise, this unopposed request is granted.

**CONCLUSION**

For these reasons, the government's cross-motion (Government's Response [78], §XV) is granted and Zaso's discovery motions (Verrillo Declaration [70], §§VIII(R)(5), (6)) are denied; and I further recommend that Zaso's motions to suppress (<u>id</u>. at §§I and IV) be denied.

Unless otherwise ordered by Judge Arcara, any objections to this Report, Recommendation and Order must be filed with the clerk of this court by March 17, 2023.  Any requests for extension of this deadline must be made to Judge Arcara.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision".  Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 59(c)(2) of this Court's Local Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority", and pursuant to Local Rule 59(c)(3), the objections must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or  identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objection.

Dated: March 3, 2023

/s/Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge

-14-