UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

     v.

JOSEPH S. ZASO,

          Defendant.

22-CR-74-LJV[1]
DECISION & ORDER

_____

## **BACKGROUND**

The defendant, Joseph S. Zaso, has been charged in three counts of a four-count indictment with (1) conspiring to distribute and to possess with intent to distribute at least one kilogram of heroin and at least 400 grams of fentanyl and to use and maintain premises for the purpose of manufacturing, distributing, and using heroin and fentanyl (21 U.S.C. § 846);  (2) using and maintaining premises for the purpose of manufacturing, distributing, and using heroin and fentanyl (21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2); and (3) possessing with intent to distribute and distributing at least 40 grams of fentanyl (21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)).  Docket Item 1.  On December 28, 2022, Zaso filed omnibus pretrial discovery motions; a motion to suppress evidence seized during a search of his residence at 48 Laurel Street, Upper Apartment, Buffalo, New York; and a motion to suppress his identification by his co-

_____

[1] This case initially was assigned to Senior United States District Judge Richard J. Arcara but later was reassigned to this Court.  *See* docket entry dated March 8, 2023.

defendant, Denver Komenda,[2] as well as by a witness Zaso believes to be Holly

Berenguer.  Docket Item 70.  The government responded to the motions on January 27,

2023.  Docket Item 78.

United States Magistrate Judge Jeremiah J. McCarthy heard oral argument on

February 9, 2023.  *See* Docket Items 81, 82, 111 (transcript).  During oral argument, the

government advised that it anticipated presenting a superseding indictment to the grand

jury.[3]  Docket Item 82.  But both sides agreed that except for Zaso's motion to suppress

evidence seized from 48 Laurel Street, his motion to suppress two identifications, and

certain discovery issues not relevant here, all other issues had been resolved.  *Id.*

On March 3, 2023, Judge McCarthy issued his Report, Recommendation and

Order ("RR&O"), finding that Zaso's motions to suppress evidence and the two

identifications, Docket Item 70, should be denied.  Docket Item 87.

With respect to Zaso's motion to suppress evidence seized from 48 Laurel

Street, Judge McCarthy found that the search warrant was supported by probable

cause and that both the warrant and the schedule of items to be searched for and

---

[2] Komenda also was charged in a separate count with possessing fentanyl with the intent to distribute that substance.  *See* Docket Item 1.  Komenda pleaded guilty before Judge Arcara on August 2, 2022, and he now is awaiting sentencing by this Court.  Docket Item 36.

[3] While these motions were pending before Judge McCarthy, a superseding indictment was filed on March 1, 2023.  Docket Item 84.  The superseding indictment brings several additional charges against Zaso: engaging in a continuing criminal enterprise (21 U.S.C. § 848(a)); a second count of using and maintaining premises for the purpose of manufacturing, distributing, and using heroin and fentanyl (21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2); and distributing heroin causing serious bodily injury (21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C)).  Docket Item 84.  The superseding indictment also added charges against several new co-defendants:  Richard A. Philbrick, Sr.; Brandon Andino; Kyle N. Lewis; Justin T. Yuchnitz; and Brian E. Cessna.  *Id.*

seized were not overly broad or imprecise.  *Id*. at 9.  With respect to Zaso's motion to suppress the two identifications, Judge McCarthy found no basis for conducting a *Wade* hearing or suppressing the identifications; instead, he said, "the trial court will be 'in a better position to determine if either a <u>Wade</u> hearing or *voir dire* outside the presence of the jury are necessary[,'] and Zaso will have the ability to seek that relief at trial."  *Id*. at 10 (internal citations omitted) (underline in original).

After this Court twice extended Zaso's time to object to the RR&O, Docket Items 92, 93, 115, 116, Zaso filed his objections on April 17, 2023, Docket Item 141.  The government responded on May 1, 2023.  Docket Item 149.  Zaso chose not to file a reply, and this Court heard oral argument on May 16, 2023.  Docket Item 160.

## LEGAL PRINCIPLES

A district court may accept, reject, or modify the findings or recommendation of a magistrate judge.  28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3).  The court must review *de novo* those portions of a magistrate judge's recommendation to which a party objects.  28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3).

This Court has carefully and thoroughly reviewed the RR&O, the objections, the response, the materials submitted to Judge McCarthy, and the transcript of oral argument before Judge McCarthy.  Based on that *de novo* review and for the reasons that follow, this Court accepts and adopts the RR&O in its entirety.  Therefore, Zaso's motion to suppress evidence seized from 48 Laurel Street is denied, and his motion to suppress the two identifications is denied without prejudice.

**FACTS**[4]

On May 11, 2022, a grand jury returned a four-count indictment charging Zaso with the narcotics crimes noted above.  Docket Item 1.  The indictment also alleged that before Zaso committed the offenses charged, he had been convicted of a "serious drug felony . . . for which [he] served more than 12 months of imprisonment" and that Zaso was released from that term of imprisonment "within 15 years of the commencement of the instant offenses."[5]  *Id*. at 4.  Arrest warrants for Zaso and Komenda were issued the same day.

About two weeks later, United States Drug Enforcement Administration ("DEA") Special Agent David L. Lauer applied to United States Magistrate Judge Mark W. Pedersen for a warrant to search 48 Laurel Street, Upper, Buffalo, New York.  Docket Item 78-5 at 10-56.  When Lauer applied for the warrant to search 48 Laurel Street, Zaso had not yet been arrested.  *Id*. at 16, ¶ 9.

The Lauer affidavit—more than 40 pages long—included extensive historical information about Zaso's alleged drug trafficking in Jamestown, New York, in 2018, 2019, and 2021.  *See id*. at 16-19, ¶¶ 10-12.  For example, the affidavit swore that a confidential source ("CS-1") purchased heroin from Zaso at least fifty times and that Zaso used CS-1 to test the potency of heroin at Zaso's former residence at 12 Locust

---

[4] The facts are taken from the indictment (Docket Item 1), the underlying motion papers (Docket Items 70 and 78), the search warrant application (Docket Item 78-5 at 10-56), the transcript of oral argument before Judge McCarthy (Docket Item 111), and the RR&O (Docket Item 87).

[5] If Zaso is convicted on Counts 1 and 3, his prior conviction for a "serious drug felony" subjects him to the enhanced penalties in 21 U.S.C. § 841(b).  The superseding indictment also includes the "serious drug felony" allegation.

Street in Jamestown.  *See id*. at 19, ¶ 12.  The affidavit also described Zaso's relationship with one of his distributors, *id*. at 19-26, ¶¶ 12-20, including the distributor's trip from Jamestown to Buffalo on September 5, 2021, to pick up narcotics from Zaso at Zaso's residence at 48 Laurel Street in Buffalo, New York.  *See id*. at 20-21, ¶ 14. According to the affidavit, a second confidential source ("CS-2") accompanied the distributor on that trip, *see id.,* and later identified Zaso in a photograph as the person with whom the distributor met at 48 Laurel Street*, see id*. at 22, n.8.

The Lauer affidavit also swore that in September 2021, law enforcement surveilled 48 Laurel Street and observed a 2017 black Ford Explorer registered to Zaso parked in the driveway.  *See id*. at 26, ¶ 21.  After obtaining a warrant, law enforcement installed a GPS tracking device on the black Ford Explorer, *see id*. at 27, ¶ 24, and after obtaining a second warrant, a second GPS tracker was placed on the vehicle.  *See id*. at 28, ¶¶ 25-26.  The devices tracked numerous trips to in and around Rochester, New York—trips that Lauer believed were for the purpose of obtaining heroin and fentanyl. *See id*.

A cooperating witness told law enforcement that at Zaso's instruction, he and others had recently followed Zaso to Zaso's home in Buffalo to purchase heroin.  *See id*. at 31-32, ¶ 32.  The cooperating witness was unable to identify the front of the residence because it was dark when they arrived and they entered through the back door, *see id.,* but he recognized the kitchen from photographs of 48 Laurel Street Upper available on Zillow*, see id*. at 33-34, ¶ 34.  The cooperating witness told law enforcement that while they were at Zaso's residence, Zaso displayed a handgun and threatened to shoot him over an outstanding drug debt.  *See id*. at 32, ¶ 32.

Based on the information in the warrant application, Judge Pedersen signed a

warrant to search 48 Laurel Street for the following fifteen items listed in Attachment B:

a. Controlled substances, including heroin and fentanyl, and paraphernalia for the packaging, diluting, cutting, weighing, processing and distributing of controlled substances, to include heroin and fentanyl, including scales, plastic bags, cutting agents, and utensils.

b. Books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the transportation, ordering, sale and distribution, and possession of heroin and fentanyl trafficking.

c. Notes and ledgers relating to association, and illegal activities of individuals involved in drug trafficking and correspondence, communications and documents, in any format, between and among co-conspirators, associates, and other drug traffickers.

d. Firearms, ammunition, gun cases and storage devices, and other weapons related to drug trafficking activities.

e. Records and documents of financial transactions relating to obtaining, transferring, secreting or spending of sums of money made from engaging in heroin and fentanyl trafficking, as well as records and documents relating to real estate transactions.

f. Financial instruments, keys to safe deposit boxes, precious metals, jewelry, and other items of value, proceeds of controlled substance transactions, records and documents of financial transactions and/or banking records and statements relating to obtaining, transferring, secreting or spending of sums of money made from unlawful activity.

g. Records of telephone calls contained in billing statements, addresses and telephone numbers in books and papers which reflect names, addresses and telephone numbers related to heroin and fentanyl trafficking, photographs regarding drug trafficking associates.

h. Documents and records regarding the ownership and/or possession of assets possibly obtained using proceeds derived from illegal drug activities, such as the distribution of heroin and fentanyl.

i. Documents and records regarding the ownership and/or possession of the searched premises.

j. Mobile telephones, cellular phones, smart phones, and other communication devices, SIM cards, associated charging device, manuals, and receipts for the purchase of cellular telephones related to drug trafficking activities.

k. Photographs and any devices capable of taking a photograph or recording a video related to drug trafficking activities.

l. Safes, concealed compartments or "traps" and items used to create such storage locations related to drug trafficking activities and items.

m. Quantities of cash and other valuables suspected to be proceeds of and evidence of drug trafficking activities.

n. All bank records, checks, credit card bills, account information, and other financial records relating to drug trafficking activities.
o. During the course of the search, photographs and/or video recordings of the searched premises may also be taken to record the condition thereof therein [sic] including entry and exit photographs of the premises to be searched, as well as photographs of the specific places in which items are found and from which items are seized.

Docket Item 78-5 at 8-9.


## DISCUSSION


**MOTION TO SUPPRESS EVIDENCE**

### Probable Cause

Zaso urges this Court to suppress evidence seized from his residence at 48 Laurel Street because the search warrant issued by Judge Pedersen was not supported by probable cause.  Docket Item 141 at 2.  More specifically, he argues that the warrant application failed to link alleged drug distribution to 48 Laurel Street and that the "lack of contacts at the Laurel Street address by anyone having personal knowledge" demonstrates a lack of probable cause.[6]  *Id.*

After Judge McCarthy reviewed both the search warrant and the application, he found that Judge Pedersen indeed had probable cause to issue the warrant.  Docket Item 87 at 5.  Judge McCarthy also found that "[i]n the absence of any specific identification by Zaso of which items were not supported by probable cause, I find no basis to conclude that the warrant was overbroad."  *Id.* at 7.  Finally, Judge McCarthy

---

[6] Zaso initially objected to the search of his cell phone, but because the government has agreed not to use any of the information obtained from the cell phone at trial, that objection is now moot.  *See* Docket Item 149 at 24.

7

found that each item listed in Attachment B was related to specific criminal offenses—

drug conspiracy, drug distribution, and maintaining drug-involved premises—in a way

that passed muster under *United States v. Bursey*, 801 Fed. App'x. 1 (2d Cir. 2020). *Id.*

at 7.  This Court agrees with each of those conclusions.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures."

U.S. Const. amend. IV.  In deciding whether to issue a search warrant,

> [t]he task of the issuing magistrate is simply to make a practical, common[]sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.  And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.

*Illinois v. Gates*, 462 U.S. 213, 238-39 (1983) (internal citations omitted).  In fact,

because warrants are preferred,

> a [party] who argues that a warrant was issued on less than probable cause faces a heavy burden.  '[W]here [the] circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. . . . [T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.

*Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991) (*quoting United States v.*

*Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 131 L.Ed.2d 684 (1965)).  And "[a]

reviewing court must accord substantial deference to the finding of an issuing judicial

officer that probable cause exists."  *United States v. Wagner*, 989 F.2d 69, 72 (2d Cir.

1993); *see also United States v. Nichols,* 912 F.2d 598, 602 (2d Cir.1990) (search

warrant); *United States v. Travisano,* 724 F.2d 341, 345 (2d Cir.1983) (search warrant).

Especially given that deference and the presumption of a warrant's validity, *see*

*Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), this

Court agrees with Judge McCarthy that Zaso has not met his heavy burden of showing

that the warrant was issued based on less than probable cause.  As Zaso correctly

notes, Docket Item 141 at 4, much of the information in the application was historical.

But the application also included information about recent drug trafficking at Zaso's

Laurel Street residence—especially a cooperating witness's statement about a drug

transaction at Zaso's home in April or May 2022, a very short time before Judge

Pederson issued the warrant.  *See* Docket Item 78-5 at 30-34, ¶¶ 31-34.  That alone

was enough to link drug trafficking to 48 Laurel Street.

Zaso argues that this information was insufficient because the cooperating

witness did not see—and could not identify—the front of the residence.  Docket Item

141 at 4.  But that argument fails for at least two reasons.  First, the cooperating witness

told law enforcement that the transaction occurred at Zaso's residence, Docket Item 78-

5 at 31-32, ¶ 32, and law enforcement knew that Zaso lived at 48 Laurel, *see id.* at 15, ¶

7; *see also id*. at 26, ¶ 21 .  Second, the cooperating witnesses identified photos of the

kitchen in the residence.  Docket Item 78-5 at 33-34, ¶ 34.  Either of those connections

was sufficient to link the Laurel Street address with Zaso's drug activity.  *See United*

*States v. Gaskin*, 364 F.3d 438, 457 (2d Cir. 2004) (probable cause "does not demand

certainty but only a fair probability that contraband or evidence of a crime will be

found"); *United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004) ("A showing of nexus

does not require direct evidence and may be based on 'reasonable inference' from the facts presented based on common sense and experience.").

Moreover, in his affidavit Special Agent Lauer linked the address to drug trafficking in other ways as well.  For example, he noted that in his experience investigating drug crimes he has learned that drug dealers often keep narcotics and other evidence of drug trafficking in their homes. *See* Docket Item 78-5 at 13-14, ¶ 5. Likewise, Lauer linked Zaso's drug activity to two vehicles that were parked at 48 Laurel Street.  *See id*. at 26-28, ¶¶ 21-26 (black 2017 Ford Explorer registered to Zaso and bearing NY license plate KEN5421); Docket Item 75-5 at 35, ¶ 35 (gray Chrysler 300 bearing NY license plate KXH7012 and operated by Zaso on or about May 10, 11, and 18, 2022).  So there was more than enough for Judge Pederson to find probable cause that evidence of drug trafficking would be found there.  *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983).

At oral argument, Zaso cited *Franks* and raised an issue not included in his written objections—what he characterized as a material omission from Lauer's affidavit. More specifically, Zaso argued that the warrant application failed to detail the tracking results from the GPS warrants.  Zaso apparently suggests that by failing to include that information in his affidavit, Lauer misled Judge Pedersen, and the warrant therefore was issued on less than probable cause.  But that argument also misses the mark.

Whatever Lauer's reason may have been not to include the results of the GPS warrants in his affidavit, he was not obligated to share every detail of the investigation in the warrant.  *See United States v. Smith,* 9 F.3d 1007, 1014 (2d Cir. 1993) (finding no requirement that an affidavit "relate unproductive or unsuccessful efforts in the course of

the investigation"). In fact, Lauer explicitly noted in paragraph 4 of his affidavit that "[b]ecause this affidavit is being submitted for the limited purpose of obtaining a search warrant, I have not included each and every fact known to me concerning this investigation." Docket Item 78-5 at 13, ¶ 4. So even if the GPS warrants did not bear fruit, Lauer was under no obligation to say that in the warrant application.[7]

In sum, the warrant application included adequate information linking drug trafficking to 48 Laurel Street, and Special Agent Lauer did not mislead Judge Pederson in applying for the warrant. For that reason, Judge Pederson had probable cause to issue the warrant, and Zaso was not entitled to a *Franks* hearing. Zaso's motion to suppress based on lack of probable cause is therefore denied.

**Overbreadth**

Zaso also argues that both the list of items to be searched for and seized (Attachment B) and the warrant itself are overly broad and not sufficiently connected to the distribution of narcotics. *See* Docket Item 141 at 5. More specifically, he suggests that by including "fifteen items for review and searching," the warrant was akin to a prohibited general warrant. *See id.* This Court disagrees.

As Judge McCarthy correctly found, Lauer's affidavit established probable cause to believe that Zaso was a "large-scale, and ongoing, heroin trafficker." *See* Docket Item 87 at 6. In his affidavit applying for the warrant, Special Agent Lauer noted that

---

[7] The Court is not suggesting that the GPS warrants were unproductive or unsuccessful. On the contrary, the Lauer affidavit refers to Zaso's trips to the Rochester area and Lauer's belief that those trips were to obtain heroin and fentanyl. *See* Docket Item 78-5 at 28 at ¶ 26.

based on his training and experience, drug dealers like Zaso "maintain a variety of the items related to those activities at their residences, including heroin, books and records, firearms, currency, and cellular telephones."  Docket Item 78-5 at 44-45, ¶ 44.  So Judge Pederson had good reason to issue a warrant authorizing a search for all those items.  *See United States v. Galpin*, 720 F.3d 436, 445-46 (2d Cir. 2013) (the requirement of particularity is satisfied when the warrant 1) identifies "the specific offense for which the police have established probable cause"; 2) describes the place to be searched; and 3) specifies "the items to be seized by their relation to designated crimes" (internal citations omitted));

And the fifteen items about which Zaso complains—actually subdivisions "a" through "o" in Attachment B to the warrant—include only the sorts of items that might relate to drug trafficking.  For example, subdivision "a" refers to drugs and drug paraphernalia, "d" refers to firearms, and "l" refers to safes or other places where drugs and firearms might be kept.  Docket Item 78-5 at 8-9.   Subdivisions "b," "c," "e," "g," "h," "i," and "n" all refer to records of drug deals, financial transactions, or ownership of the premises, *id.*—all obviously potential links in the evidence of drug trafficking. Subdivisions "f" and "m" refer to money, financial instruments, and valuables that might constitute proceeds of drug trafficking.  *Id.*  Finally, subdivisions "j" and "k" refer to phones, cameras, and photographs that might include evidence of drugs and drug trafficking as well as related communications.[8]  *Id.* at 9.  And there is nothing

---

[8] Subdivision "o" is not another category of items; rather, it simply gives law enforcement permission to take photos and videos during the search. Docket Item 78-5 at 9.

"overbroad" about a warrant that details and breaks down categories of materials, all of which relate to drug dealing in some way. *See United States v. Moody*, 2021 WL 202698, *9 (W.D.N.Y.), *adopted* 2021 WL 1054372 (W.D.N.Y. 2021) ("the warrant authorized the search for and seizure of specified evidence relevant to drug trafficking, such as, narcotics, drug records, photographs and video tapes depicting individuals involved in narcotics violations, and bank records … precisely the type of warrant that courts routinely uphold against overbreadth challenges.").

Zaso argues that none of the confidential sources or cooperating witnesses offered information suggesting that he kept records or "drug ledgers" or that 48 Laurel Street was a "drug house where drugs were stored and distributed." *See* Docket Item 141 at 5. But the absence of specific allegations like these does not negate the probable cause for the warrant. As Judge McCarthy correctly observed, Special Agent Lauer relied on his training and experience to list the types of records that drug dealers maintain, and only items like those were included in the warrant. *See Moody*, *supra*. And as noted above, there was good reason for Judge Pederson to conclude that those items might be found at Zaso's residence, especially in light of the evidence of a very recent drug deal there. *See supra* at 9-10.

In sum, there was nothing overbroad about the warrant. On the contrary, it included only items that might well evidence drug trafficking, and courts routinely approve warrants like this one. *See Moody, supra*. Zaso's motion to suppress based on the alleged overbreadth of the warrant therefore is denied.

**Good Faith Exception**

Finally, even if this Court disagreed with Judge McCarthy's finding that the warrant was based on probable cause, the "good faith exception" established in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), would preclude suppression here.  Under *Leon*, as long as law enforcement acted with objective and reasonable good faith in applying for and executing a warrant, any evidence seized should not be suppressed even if the judicial officer erred in finding probable cause to issue the warrant.  *See Leon*, 468 U.S. at 922-23.  Here, there is no reason to believe that law enforcement acted with anything other than good faith, and so even if the warrant application were deficient in some way, Zaso's argument still would fail.

For all the above reasons, Zaso's objections to Judge McCarthy's recommendation to deny his motion to suppress evidence are overruled, and Zaso's motion to suppress evidence found during the search of his home at 48 Laurel Street is denied.

**MOTION TO SUPPRESS IDENTIFICATION**

Zaso also seeks to suppress two identifications—one made by his co-defendant, Komenda, and the second by someone who he believes is Holly Berenguer.  Docket Item 70 at 16-17.  Zaso argues that showing Komenda and Berenguer a single photograph—in Komenda's case, Zaso's driver's license photograph—was unduly suggestive and unlawful.  *Id*.  For that reason, Zaso seeks an order precluding the government from offering those two identifications at trial, or in the alternative, a hearing

pursuant to *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

Judge McCarthy relied on the government's representations that the government's trial witnesses will identify Zaso based upon their "personal interaction and independent memory" to conclude that there was no basis to suppress the identifications or to conduct a *Wade* hearing at this time.  Docket Item 87 at 10 (quoting Docket Item 78 at 26).  But Judge McCarthy noted that this Court will be "in a better position to determine if either a <u>Wade</u> hearing or *voir dire* outside the presence of the jury are necessary," Docket Item 87 at 10 (underline in original) (quoting *United States v. Valdez*, 2020 WL 770338 at *6 (W.D.N.Y.), *adopted* 2020 WL 717137 (W.D.N.Y 2020)), and he therefore recommended that the motion be denied without prejudice to its renewal later in the process.  This Court agrees and adopts Judge McCarthy's recommendation.  Zaso's motion to suppress the two identifications, or, in the alternative, for a *Wade* hearing, is denied without prejudice.

## **CONCLUSION**

For the reasons stated above and in Judge McCarthy's RR&O, Zaso's motion to suppress evidence seized during the search of his home at 48 Laurel Street, Docket Item 70, is DENIED, and Zaso's motion to suppress the two identifications or for a *Wade* hearing is DENIED WITHOUT PREJUDICE.

 SO ORDERED.


   Dated:   June 15, 2023
            Buffalo, New York


                                          _s/ Lawrence J. Vilardo_____
                                          LAWRENCE J. VILARDO
                                          UNITED STATES DISTRICT JUDGE