UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    v.

JOSEPH S. ZASO,

    Defendant.

22-CR-74-LJV-JJM
DECISION & ORDER

---

    Before the Court are motions filed by the defendant, Joseph S. Zaso, (1) to preclude the expert testimony of Timothy Wiegand, M.D., a medical toxicologist; (2) to strike references to Zaso's nickname, "Joey Cracks," from the indictment; and (3) for an identification hearing.  Docket Item 306.  After the government responded to those motions, Docket Item 320, this Court heard oral argument and reserved decision, *see* Docket Item 331.  For the reasons that follow, the Court denies the motions.

## **MOTION TO PRECLUDE DR. WIEGAND'S TESTIMONY**

    The government seeks to introduce the testimony of Dr. Wiegand to support its assertion that an alleged victim, B.K., suffered a non-fatal fentanyl overdose from drugs distributed by Zaso.  Dr. Wiegand reviewed the grand jury transcripts in this case, including that of S.W. who witnessed B.K. suffer the alleged overdose.  Docket Item 306-1 at 3.  Dr. Wiegand then concluded that "[t]he description given by [S.W.] is consistent with a near fatal overdose of fentanyl."  *Id*. at 7.

    Zaso seeks to exclude Dr. Wiegand's expert opinion, arguing that it does not meet the standard under *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579

(1993).  *See* Docket Item 306.  More specifically, Zaso argues that without conducting any medical tests, Dr. Wiegand has no way to know whether B.K. actually suffered an overdose.  *Id.* at 7-8.  And Zaso submits a report from his own expert, Brian Ackerman, M.D., opining that while the description of the incident involving B.K. was consistent with a fentanyl overdose, that incident also could have resulted from other causes.  *Id.* at 8-9.

This Court agrees that Dr. Wiegand does not a have a basis to opine that B.K. experienced a non-fatal fentanyl overdose.  But that is not what Dr. Wiegand's opinion states.  Rather, Dr. Wiegand's opinion is that what B.K. experienced is *consistent with* a non-fatal fentanyl overdose.[1]  *See* Docket Item 306-1 at 7.  Based on his experience as a medical toxicologist, Dr. Wiegand is qualified to give that opinion and has a basis to do so.  *Cf. United States v. Sadler*, 24 F.4th 515, 531 (6th Cir. 2022) (noting that "[t]he government's expert witness . . . testified that [the victim]'s medical condition was consistent with an opioid overdose—either on heroin or fentanyl—and that, without medical attention, she would have died" despite the victim's not having had a urinalysis or blood toxicology test).

Zaso's critiques of Dr. Wiegand's opinion go to its weight, not its admissibility.  *See Aventis Env't Sci. USA LP v. Scotts Co.*, 383 F. Supp. 2d 488, 514 (S.D.N.Y. 2005) (explaining that "a challenge to the facts or data relied upon by [the expert] does not go to the admissibility of his testimony, but only to the weight of his testimony" (citations omitted)).  And Zaso can, of course, cross-examine Dr. Wiegand on the limits of his

---

[1] The government confirmed at oral argument that Dr. Wiegand will opine only that S.W.'s description of B.K.'s symptoms is consistent with a non-fatal fentanyl overdose; he will not opine that B.W. experienced an overdose.

opinion, the fact that he never did any testing, and other possible causes of B.K.'s symptoms. But this Court finds no basis to preclude Dr. Wiegand's opinion.

Accordingly, Zaso's motion to preclude Dr. Wiegand's testimony is denied.

### **MOTION TO STRIKE "JOEY CRACKS" FROM THE INDICTMENT**

Next, Zaso moves to strike references to his nickname, "Joey Cracks," from the indictment and to preclude references to that nickname at trial. Docket Item 306 at 10-11. The Court shares Zaso's concerns about superfluous references to inflammatory nicknames in indictments. But that does not appear to be what happened here.

First, the government has represented to the Court that there will be witnesses called at trial who know Zaso only by the name "Joey Cracks." Second, as the government observed at oral argument, the indictment also includes two benign nicknames by which Zaso is known: "Sosa" and "JC." *See* Docket Item 262 (second superseding indictment). Thus, it appears that "Joey Cracks" was included for the proper purpose of identifying Zaso when certain witnesses know him only by that name. As such, there is no basis to grant Zaso's motion to strike. *See United States v. Riwqer*, 259 F. Supp. 2d 275, 293 (S.D.N.Y. 2003) ("Aliases and nicknames should not be stricken from an indictment when evidence regarding those aliases or nicknames will be presented to the jury at trial." (citations omitted)); *United States v. Rucker*, 32 F. Supp. 2d 545, 560 (E.D.N.Y. 1999) ("Reference to a defendant by his name and alias [in the indictment] is permissible if the government intends to offer evidence of that alias as being necessary to identify the defendant in connection with the crimes charged.").

Zaso relies on *United States v. Farmer*, 583 F.3d 131, 146 (2d Cir. 2009), to argue that the Court should preclude the government from using his nickname at trial.

*See* Docket Item 306 at 10-11.  But, as the government notes, in that case the defendant's nickname was "Murder"—the very crime he was accused of committing. Docket Item 320 at 15.  What is more, in *Farmer*, the Second Circuit said that the main problem "was not the admission of the nickname into evidence.  Rather, it was the prosecutors' frequently repeated, gratuitous invocation of Farmer's nickname in their addresses to the jury, uttered in a context that, in effect, invited the jurors to infer that the defendant had earned the nickname among his gang colleagues as a result of his proclivity to commit murder."  583 F.3d at 146-47.  Thus, the concerns raised in *Farmer* can be addressed by precluding the government from gratuitously using Zaso's nickname at trial and a curative instruction, if necessary.

For those reasons, Zaso's motion to strike "Joey Cracks" from the indictment is denied.  That being said, "[i]f the government at trial fails to show either [Zaso]'s use of the alias or the relevancy of the alias in proving the crimes charged in the indictment, [Zaso] may renew his motion to strike, and the court may strike the alias and instruct the jury appropriately."  *See United States v. Montague*, 2016 WL 11621620, at *5 (W.D.N.Y. May 17, 2016).

### MOTION FOR AN IDENTIFICATION HEARING

Finally, Zaso seeks an identification hearing based on a report by a potential trial witness, R.P., "that [R.P.] knew more than one individual referenced as 'Joey Cracks' or 'Joey Kracks.'"  Docket Item 306 at 10-11.  This Court agrees with the government that Zaso has not established a basis for such a hearing.  *See* Docket Item 320 at 16-21.

Under *United States v. Wade,* 388 U.S. 218 (1965), and *United States v. Maldonado-Rivera,* 922 F.2d 934 (2d Cir.1990), a defendant may request a hearing "to

4

determine whether pretrial identification procedures were unnecessarily suggestive and depending on the outcome, whether an in-court identification should be permitted." *United States v. Berganza*, 2005 WL 372045, at *9 (S.D.N.Y. Feb. 16, 2005) (citation and internal quotation marks omitted). To be entitled to such a hearing, the defendant must make "a threshold showing" that "the identification procedures used were impermissibly suggestive." *Id.* at *10 (citing *United States v. Hamideh,* 2001 WL 11071, at *1 (S.D.N.Y. Jan. 3, 2001)).

Here, R.P. identified another individual as "Joey Cracks" but "stated that this is not the same 'Joey Cracks' as [Zaso] and that there are two 'Joey Cracks.'" Docket Item 320-4 at 6; *see also* Docket Item 306-1 at 18 (reporting that R.P. "stated that #27 in the [Homeland Security Investigations] photobook was the 'other Joey Kracks' and that . . . up to this point all interactions between himself and [Zaso were] not confused with the 'other Joey Kracks'"). There is no indication—let alone "threshold showing"—of impermissible suggestiveness.

Moreover, as the government observes, to the extent that Zaso has concerns about R.P.'s ability to correctly identify him, that issue is more appropriately handled with a brief voir dire of the witness outside the presence of the jury prior to his testimony. *See* Docket Item 320 at 20.

## **CONCLUSION**

For all those reasons, Zaso's motions to preclude the expert testimony of Dr. Wiegand, to strike references to "Joey Cracks" from the indictment, and for an identification hearing, Docket Item 306, are DENIED.

5

SO ORDERED.

Dated: April 29, 2024
       Buffalo, New York


                                          ***/s/ Lawrence J. Vilardo***
                                          LAWRENCE J. VILARDO
                                          UNITED STATES DISTRICT JUDGE